UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 16-cv-10935-ADB |
| DAVID SEELEY, et al., | * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON
MOTION FOR PARTIAL SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff, United States of America (the "Government"), commenced this action against Defendants David Seeley and Seretha Seeley (the "Seeleys") to recover unpaid tax liabilities and to enforce federal tax liens that encumber a parcel of real property located in Topsfield, Massachusetts (the "Property") by means of a forced sale. [ECF No. 1]. The Government has joined as Defendants the Town of Topsfield, Massachusetts and the Massachusetts Department of Revenue because they have or could claim an interest in the Property. [See ECF No. 1 ¶¶3–4]. Currently pending before the Court is the Government's motion for partial summary judgment. [ECF No. 40]. For the reasons stated below, the Government's motion is GRANTED.

I. BACKGROUND

The following facts are drawn from the statement of facts contained in the Government's motion for summary judgment [ECF No. 40-1], unless otherwise noted. The Court considers all

undisputed facts set forth in the Government's statement of facts to be admitted. See Zimmerman v. Puccio, 613 F.3d 60, 63 (1st Cir. 2010).

The Seeleys reside in Topsfield, Massachusetts at the Property, which they purchased in 1999. [ECF No. 40-1 ¶ 15]. From 2005 through 2014, the Seeleys accrued federal tax liabilities for every tax year. [Id. ¶¶ 1–10]. A delegate of the Secretary of the Treasury made assessments for federal income tax liabilities against the Seeleys for those tax years. [Id.]. As to each assessment, a delegate of the Secretary of the Treasury notified the Seeleys of the assessment and made a demand for payment. [Id. ¶ 12]. The Internal Revenue Service ("IRS") has issued Form 4340 Certificates of Assessment and Payment that detail the Seeleys' tax liabilities for each individual tax period, including statutory interest and penalties. [ECF No. 40-4 at 43–93]. These assessments reflect the Seeleys' unpaid tax liabilities as of the dates of assessment. [Id.]. Unpaid balances totaling $103,082.04 remain for the assessed tax periods, plus statutory interest and penalties that have accrued since January 31, 2018.

Notices of Federal Tax Liens against the Seeleys for their income tax liabilities for the tax years 2005 to 2014 were recorded by the IRS with the Southern Essex District Registry of Deeds in 2009, 2011, 2013, 2014, and 2015. [ECF No. 40-5 at 5–11]. Notices of Federal Tax Liens against the Seeleys were refiled for the tax years 2005 and 2006 in 2016. [Id. at 12; ECF No 54-1 at 3].

On August 31, 2016, the Seeleys filed for relief under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). [ECF No. 40-1 ¶ 14]; In re Seeley, No. 16-13357 (Bankr. D. Mass.). On December 28, 2016, the Bankruptcy Court granted an Order of Discharge, and the Bankruptcy Court closed the Seeleys' bankruptcy case on January 4, 2017. [ECF No. 40-1 ¶ 14].

The Government commenced this action on May 24, 2016 to enforce federal tax liens pursuant to 26 U.S.C. §§ 7401 and 7403. [ECF No. 1]. On March 5, 2018, the Government filed its motion for partial summary judgment seeking (i) to reduce to judgment its assessments against the Seeleys for unpaid taxes, penalties, and interest; (ii) a judgment that the Seeleys' bankruptcy judgment did not discharge their liabilities for the 2013 and 2014 tax years; (iii) a judgment that the tax liens are valid and were not discharged by the Seeleys' bankruptcy judgment; and (iv) to enforce the federal tax liens associated with the Seeleys' liabilities for the tax years 2005 through 2014 via a foreclosure sale of the Property. [ECF No. 40]. The Town of Topsfield, the Seeleys, and the Massachusetts Department of Revenue filed their responses to the Government's motion on April 2, April 6, and April 12, 2018, respectively. [ECF Nos. 41, 42, 47].[1] On April 23, 2018, the Government filed its reply brief. [ECF No. 54].

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is considered "genuine" when "the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A fact is considered "material" when "its existence or nonexistence has the potential to change the outcome of the suit." Id. at 5 (citing Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995)).

---

[1] In their responses, the Town of Topsfield, Massachusetts and the Massachusetts Department of Revenue state that they do not oppose the motion for summary judgment, that they have valid tax liens against the Seeleys, and that they will seek payment on those liens following any foreclosure sale. [ECF Nos. 41 at 1–2; 47 at 1–2].

"To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the Court] to specific evidence in the record that would be admissible at trial." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (citing Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Once the moving party has laid out its basis for summary judgment, the burden shifts to the party opposing summary judgment to demonstrate, "with respect to each issue on which she would bear the burden of proof at trial, . . . that a trier of fact could reasonably resolve that issue in her favor." Borges, 605 F.3d at 5.

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment." Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003). Where inferences are to be drawn from the stated facts, those inferences "must be viewed in the light most favorable to the party opposing the motion." Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (citing Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)). The Court, however, "safely may ignore conclusory allegations, improbable inferences, and unsupported speculation." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (internal quotation and citation omitted).

## III. DISCUSSION

In its motion for partial summary judgment, the Government contends that there is no genuine issue of material fact as to the validity of the federal income tax assessments against the Seeleys and that it is entitled to enforce its liens arising from those assessments against the

Property.  As set forth below, the Court finds that the tax assessments and tax liens against the Seeleys are valid and that the Government may enforce the tax liens through the sale of the Property.

### A. Judgment on Federal Income Tax Assessments

The Government first seeks to reduce to judgment its assessments against the Seeleys for unpaid taxes, penalties, and interest.  A tax assessment, which is "an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes . . . is entitled to a legal presumption of correctness" in a tax suit.  United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002); see also United States v. Berk, 374 B.R. 385, 391 (D. Mass. 2007) ("In all tax suits, the Internal Revenue Commissioner's deficiency determination 'is presumed correct, and . . . the taxpayer bears the burden of proof and persuasion to show otherwise.'" (quoting Lefebvre v. Comm'r of Internal Revenue, 830 F.2d 417, 419 n.3 (1st Cir. 1987)).  "A taxpayer who challenges the IRS's assessment must present specific evidence sufficient to overcome the presumption."  United States v. Curley, No. 12-cv-11494-JCB, 2014 WL 12573545, at *4 (D. Mass. Jan. 2, 2014) (citation omitted).  "If the taxpayer cannot meet this burden then the court must allow the United States' motion for summary judgment as to the validity of the assessed tax amounts."  Berk, 374 B.R. at 391 (citing United States v. LaBombard, 107 F. Supp. 2d 57, 60 (D. Mass. 2000)).

In support of its motion for partial summary judgment, the Government introduced sufficient evidence to trigger the legal presumption of correctness afforded to tax assessments. The Government submitted the declaration of Mary Bishop, an IRS advisor, and IRS documentation supporting the amounts due from the Seeleys for the 2005-2014 tax years, including interest.  [See ECF No. 40-4].  This documentation includes an "INTST" report from

5

the Information Data Retrieval System ("IDRS"), account transcripts from the IDRS, and Form 4340 Certificates of Assessment and Payments. [Id.]. According to the Bishop declaration and these documents, notices of the assessments and demands for payment were sent to the Seeleys, the Seeleys have not paid the assessed federal tax liabilities, and, as of January 31, 2018, the total balance of assessed liabilities was $103,082.04. [Id. at ¶¶ 19–20; id. at 10–93]; see also Geiselman v. United States, 961 F.2d 1, 5–6 (1st Cir. 1992) (finding that Form 4340 Certificates of Assessment and Payments that contain the dates of the assessment and sufficient dates of notice "are 'presumptive proof of a valid assessment'" (citation omitted)).

In opposition to the Government's motion for partial summary judgment, the Seeleys do not specifically dispute the Government's calculation regarding their tax liabilities or set forth an alternative calculation. [See ECF No. 42]. The Seeleys contend that "it is questionable whether the Penalties for the years 2005, 2007, 2008, 2009, 2010, 2014, 2015, et seq[.], should be assessed under the circumstances" because the Government "can waive said penalties," id. at 4, but this assertion is insufficient to create a factual dispute as to the Government's assessments. "Absent evidence that the assessments were not made, were not valid, or were not conveyed to [the taxpayer], there can be no genuine dispute regarding the existence or validity of the relevant tax liabilities." United States v. Kansky, No. 12-cv-12198-PBS, 2013 WL 6406923, at *5 (D. Mass. Oct. 15, 2013). For these reasons, the motion for partial summary judgment is granted in the amount of the deficiency (including statutory interest and penalties) for tax years 2005 through 2014, which totals $103,082.04, plus any additional statutory interest and penalties that accrue after January 31, 2018.

The Government also seeks an order finding that the bankruptcy did not discharge the assessed liability for the calendar years 2013 and 2014, and that the Seeleys are liable to the

United States for the amounts assessed. "If the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim . . . is nondischargeable in bankruptcy under [11 U.S.C.] § 523(a)(1)(A)." Young v. United States, 535 U.S. 43, 46 (2002). Here, the tax returns for 2013 and 2014 were due April 15, 2014 and April 15, 2015, respectively, and the Seeleys filed their bankruptcy petition on August 31, 2016. Thus, the Seeleys' tax liabilities from 2013 and 2014 are nondischargeable under Section 523(a)(1)(A).

In their opposition, the Seeleys concede that they are personally responsible for the 2013 and 2014 tax liabilities but dispute whether the penalties should be assessed. [See ECF No. 42 at 2, 4]. For the reasons stated supra, the Seeleys failed to create a factual dispute as to the Government's assessments of penalties. The Court finds that the Seeleys are liable to the United States for their assessed liability (including statutory interest and penalties) for tax years 2013 and 2014 in the amounts of $10,765.46 and $3,903.17, respectively, plus any additional statutory interest and penalties that have accrued since January 31, 2018.

### C. Sale of the Property

The Government next seeks to enforce the federal tax liens associated with the Seeleys' tax liabilities from 2005 through 2014 through a foreclosure sale of the Property. [ECF No. 40-2 at 6–8]. "Federal tax liens are created upon all property and rights to property when a taxpayer neglects or refuses to pay any tax after demand." Berk, 374 B.R. at 392 (citing 26 U.S.C. § 6321). "The lien continues 'until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason or lapse of time.'" Id. (quoting 26 U.S.C. § 6321). "The government has the right to file a civil action to enforce a federal tax lien through the sale of the property to which the lien attaches." United States v. Beninati, 632 F. Supp. 2d 116, 119 (D. Mass. 2009) (citing 26 U.S.C. § 7403(a)

and (c)).  Under 26 U.S.C. § 6502(a), the Government must sue to enforce a lien foreclosure "within 10 years after the assessment of the tax" unless it extends the statute of limitations by timely re-filing the lien during the one–year period ending ten years and thirty days after the assessment date.  See 26 C.F.R. 301.6323(g)–1(a), (c).

The Government introduced evidence that the IRS filed notices of federal tax liens on the Property for the Seeleys' unpaid federal tax liabilities for the years 2005 through 2014 in the Southern Essex District Registry of Deeds on or before June 8, 2015.  [ECF No. 40-5 at 1, 5–12; ECF No. 54-1 at 1, 3].  In response, the Seeleys make three arguments.  First, the Seeleys argue that the lien on the Property for the tax year 2006 is invalid because it has expired.  In support of its Reply, however, the Government submitted evidence that the IRS timely refiled the notice of the 2006 lien with the Southern Essex District Registry of Deeds on July 18, 2016.  [ECF No. 54-1 at 3].  Therefore, the Court finds that the 2006 lien is valid.

Second, the Seeleys argue that their declaration of homestead for the property renders the liens for the years 2011 through 2014 invalid.  Section 522 of the Bankruptcy Code allows a debtor to exempt certain property from the bankruptcy estate.  In Massachusetts, a debtor may elect either the exemptions provided under federal law or the state law exemptions.  See In re Lyons, 355 B.R. 387, 389 (Bankr. D. Mass. 2006).  In connection with their bankruptcy, the Seeleys chose the state exemption scheme and claimed a $500,000 homestead under M.G.L. c. 188, §§ 1, 3.  [ECF No. 42 at 2–3].  This homestead declaration allows the Seeleys to exempt up to $500,000 of value from certain creditor liens and enforcement actions.  The Court finds, however, that the Seeleys' homestead has no effect on the enforceability of the federal tax liens.

As described supra, under 26 U.S.C. § 7403, the Government may file a civil action in federal district court to enforce federal tax liens.  26 U.S.C. § 7403(a).  Federal courts have the

authority to "decree a sale of such property" after "determin[ing] the merits of all claims to and liens upon the property" when an interest or claim of the United States is established. 26 U.S.C. § 7403(c). "The Supreme Court has held that when a state-created exemption, such as a homestead, conflicts with federal law, the exemption does not immunize a property from federal tax liens under the Supremacy Clause." Berk, 374 B.R. at 398 (citing United States v. Rodgers, 461 U.S. 677, 701–02 (1983). "'[E]xempt status under state law does not bind the federal collector.'" Id. (quoting United States v. Craft, 535 U.S. 274, 288 (2002). Thus, the Seeleys' homestead does not prevent the United States from enforcing the liens on the Property through foreclosure.[2]

Finally, the Seeleys argue that the bankruptcy stay precludes the Government from foreclosing on the Property. [ECF No. 42 at 4]. The Court disagrees. "The filing of a bankruptcy petition 'operates as a stay, applicable to all entities,' of most actions against a debtor, the debtor's property, and property of the bankruptcy estate." In re Flynn, 582 B.R. 25, 28 (B.A.P. 1st Cir. 2018) (citing 11 U.S.C. § 362(a)). Here, the bankruptcy stay lifted when, on December 28, 2016, the U.S. Bankruptcy Court for the District of Massachusetts granted an Order of Discharge and closed the Seeleys' bankruptcy case. In re Seeley, No. 16-13357, ECF

---

[2] In the alternative, the Court agrees with the Government that the Seeleys' declaration of homestead has no effect on the enforceability of the liens because the Massachusetts homestead statute expressly excepts federal tax liens, and that exception is not preempted by federal law. Specifically, Section 3 of the homestead statute withholds homestead protection from sales to satisfy federal tax liens. See M.G.L. c. 188, § 3(b)(1). The First Circuit has held that the "Massachusetts homestead statute is preempted to the extent that it permits exempt property to be liable for debts other than those expressly enumerated in" the federal Bankruptcy Code. In re Weinstein, 164 F.3d 677, 683 (1st Cir. 1999). The exception for federal tax liens under Massachusetts law is not pre-empted, however, because it is also expressly enumerated in the Bankruptcy Code. See 11 U.S.C. § 522 (c)(2)(B).

No. 42, (Bankr. D. Mass. Dec. 28, 2016) ("Order of Discharge"); see 11 U.S.C. § 362(c)(2)(C). Thus, there is no stay in force to impede the foreclosure sale.[3]

D.  Rule 54(b) Judgment

The Government requests that the Court enter a partial final judgment as to its summary judgment order under Federal Rule of Civil Procedure 54(b). [ECF No. 40]. "Ordinarily, a judgment is final (and, thus, appealable under 28 U.S.C. § 1291) only if it conclusively determines all claims of all parties to the action." Nichols v. Cadle Co., 101 F.3d 1448, 1449 n.1 (1st Cir. 1996) (per curiam). Rule 54(b) provides for the entry of judgment and the availability of appeal on fewer than all the claims in a multi-claim action where "the ruling underlying the proposed judgment is final" and "there is no just reason for delay." United States ex rel. Wilson v. Bristol-Myers Squibb, Inc., No. 06-cv-12195-MLW, 2013 WL 3327317, at *6 (D. Mass. June 27, 2013) (citations and quotation marks omitted). "To qualify as final, a ruling must 'dispose[ ] completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally.'" Id. (quoting Nystedt v. Nigro, 700 F.3d 25, 29 (1st Cir. 2012)); see also Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980) (the court's ruling "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)).

---

[3] The Seeleys also incorrectly suggest that the Order of Discharge prohibits the foreclosure sale. While the Order of Discharge prohibits creditors from collecting debts that were discharged in the bankruptcy, the federal tax liens on the Property were not discharged. Order of Discharge at 1. See Berk, 374 B.R. at 392 n.4 ("While bankruptcy discharge may relieve the [Chapter 7 debtor] of personal liability for those years under 26 U.S.C. § 6325, it does not render the federal tax liens for those years unenforceable.").

10

The Court finds that this Memorandum and Order does not qualify as "final" under Rule 54(b) because it does not resolve all issues necessary to award judgment under 26 U.S.C. § 7403(c). Where a court decrees a foreclosure sale pursuant to Section 7403(c), it must also make findings concerning the order of priorities for distribution of the sale proceeds. Here, the Court does not have before it evidence of the priority of the parties' liens with respect to each other and, as a result, makes no findings at this time as to the interests of the parties in the distribution. A partially adjudicated claim cannot serve as the basis for a Rule 54(b) certification and, accordingly, the Government's request is denied.

### III. CONCLUSION

For the reasons stated above, the Government's motion for partial summary judgment is <u>GRANTED</u> and the Court renders its judgment as follows:

1. IT IS HEREBY ADJUDGED that a delegate of the Secretary of the Treasury properly assessed the Seeleys with liabilities for federal income tax, as a married couple who filed their tax returns jointly, regarding the years 2005 through 2014, and the balance on these liabilities, effective January 31, 2018, is $103,082.04. Interest has accrued and shall accrue on these assessed liabilities on and after February 1, 2018, as specified in 26 U.S.C. §§ 6601, 6621-6622, 28 U.S.C. § 1961(c), along with all other statutory additions.

2. IT IS FURTHER ADJUDGED that on August 31, 2016, the Seeleys filed for relief under Chapter 7 of the United States Bankruptcy Code in the District of Massachusetts, <u>In re Seeley</u>, Bankr. No. 16-13357. The Bankruptcy Court granted a general bankruptcy discharge to the Seeleys on December 28, 2016, and it closed their bankruptcy case on January 4, 2017.

3. IT IS FURTHER ADJUDGED that the bankruptcy did not discharge the Seeleys from their assessed liability for income tax, plus associated penalty and interest, pertaining to the calendar years 2013 and 2014. These debts are excepted from bankruptcy discharge.

4. IT IS FURTHER ADJUDGED that the Seeleys are liable to the United States, jointly and severally, for their assessed liability for income tax, plus associated penalty and interest, pertaining to the years 2013 and 2014, in the amounts of $10,765.46 and $3,903.17, respectively, as of January 31, 2018. Interest has accrued and shall accrue on these adjudged liabilities on and after February 1, 2018, as specified in 26 U.S.C. §§ 6601, 6621-6622, 28 U.S.C. § 1961(c), along with all other statutory additions.

5. IT IS FURTHER ADJUDGED that David Seeley is the owner of the real estate commonly known as 120 Salem Road, Topsfield Township, Essex County, Massachusetts (the "Property"). The legal description for the Property is as follows:

> With buildings thereon located on the Easterly side of Salem Road in said Topsfield, bounded as follows:
>
> Beginning at a point on Salem Road five hundred (500) feet Southerly from land of Ruth B. Edwards; thence running Northeasterly about thirty (30) feet to the wall; thence continuing in the same direction about four hundred fifty (450) feet to a corner in the Wall; thence turning at about right angles and running Southeasterly about two hundred (200) feet to a wall; thence turning at about right angles and running Southwesterly about six hundred (600) feet to a corner in the wall; thence more Westerly about seventy-five (75) feet by the wall to said Salem Road at a point about opposite the intersection of McLeod Road; thence running Northwesterly on Salem Road about three hundred thirty (330) feet to the point of beginning.
>
> RESERVING HOWEVER A LIFE ESTATE FOR THE LIFETIME OF THE GRANTOR. Said grant is made subject to and with the benefit of a Declaration of Homestead dated May 8, 1990 recorded at Essex South Registry of Deeds Book 010431 Page 202.
>
> Being the same premises conveyed to Grantor by Deed dated May 9, 1946 recorded at South Essex County District Registry of Deeds at Book 3497 Page

219 and by inheritance from Estate of John W. Dwinell. See Essex Probate No. 201392.

The parcel identification number ("PIN") for the Property is 70-7.  David Seeley acquired ownership of the Property by deed, recorded in the Southern Essex District Registry of Deeds on March 8, 1999.

6. IT IS FURTHER ADJUDGED that under 26 U.S.C. §§ 6321-22, the assessed liabilities for the years 2005 through 2014, referenced above, constitute liens in favor of the United States in the amount of the balances due, $103,082.04 effective January 31, 2018, upon the Property, despite the bankruptcy discharge.  The lien notices properly recorded by the IRS preserved these liens. See, e.g., 11 U.S.C. § 522(c)(2)(B).

7. IT IS FURTHER ADJUDGED that the federal tax liens upon the TOPSFIELD PROPERTY shall be enforced by sale of the property free and clear of all rights, claims, titles, liens, and interests of the parties.

8. IT IS FURTHER ADJUDGED that the sale proceeds shall be deposited with the Clerk of this Court for distribution in accord with the parties' legal priorities as determined by further order of this Court. The sale will not change any parties' priority. The relative priority of the parties' interests in the sale proceeds shall be the same as the relative priority of the parties' interests in the property prior to sale.

9. IT IS FURTHER ADJUDGED that the United States shall in due course file a motion and proposed order setting forth with particularity the sale procedure for the Property and the distribution procedure for the sale proceeds.

**SO ORDERED.**

November 8, 2018

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE